## 50708. CHILIVIS v. MARBLE PRODUCTS COMPANY.

EVANS, Judge.

Marble Products Company engages in manufacturing and producing marble products from marble rock. To reduce the smaller rocks at its quarry to powder, it procured certain machinery, including a Raymond Roller Mill. It applied for a certificate of exemption as to payment of sales and use tax. The Commissioner of Revenue denied the request for tax exemption stating that in his judgment the machine did not *manufacture any new personal property* but rather *processed tangible personal property*. In effect, the commissioner held that the taxpayer quarried the rock and crushed marble fragments from larger sizes to smaller sizes; and the Raymond Roller Mill was simply another machine for the final crushing of rock into the consistency of flour.

An assessment was made on the machine when the sales and use tax was not paid. The taxpayer appealed; the lower court sustained a motion for summary judgment in favor of the taxpayer and denied a motion for summary judgment in favor of the commissioner. The commissioner appeals. *Held:*

1. Exemptions from taxation must be strictly construed, and an exemption will not be held to have been conferred unless the terms under which it is granted clearly and distinctly show such was the intention of the General Assembly. See *Cherokee Brick &c. Co. v. Redwine,* 209 Ga. 691 (75 SE2d 550), and cases cited at page 693.

2. The specific law which the taxpayer relies on for exemption here is an exemption of: "The sale of machinery which is used directly in the manufacture of tangible personal property when such machinery is incorporated, as additional machinery, for the first time into a manufacturing plant presently existing in this State: Provided, the acquisition of such machinery results in a substantial increase in the productive capacity of such plant." Code Ann. § 92-3403a C. (2) (n) (2). (The increase in productivity is not in question.)

In *Hawes v. Custom Canners, Inc.,* 121 Ga. App. 203, 206 (173 SE2d 400), this court had for decision the question of whether certain machinery was used directly or indirectly in the manufacturing process. In that case, the machinery for the storage of liquid sugar and the conveyer to store the final products were held not to be used directly in the manufacturing process and were subject to the tax. The steam generators and boilers for heating water for cleaning purposes were likewise held to be an indirect use in canning since the steam did not touch the cans. But the air compressor for equalizing pressure in filling the cans was held to be a direct use in the manufacturing process.

In the case sub judice the commissioner does not contend the roller mill was not used directly but insists *the machinery was not used in a manufacturing process at all.*

3. By rule of the commissioner, the manufacturing process has been defined as consisting of: ". . . a series of separate operations at a fixed location whereby, through the application of machines and labor to raw material or materials at any stage of becoming finished, tangible, personal property, *the form or composition* of the material or materials is significantly changed." (Emphasis supplied.) In short, the argument of the commissioner is that the raw material is not changed in form or composition but is still rock from the marble which has been quarried until reduced to marble dust, that is, calcium carbonate, the chemical term for limestone or marble.

Neither counsel for the taxpayer nor counsel for the commissioner cite any Georgia law. Both, however, cite decisions of foreign jurisdictions which are in conflict as to the principle now under consideration.

4. Under the admitted facts, the marble rock is first quarried, and its original state is continuously reduced in size until it reaches the roller mill machine. At this stage, the rock is pulverized, washed, and heat applied to remove moisture, thereby producing the calcium carbonate in several minute degrees of consistency, and is to be used to make putty, mastics, adhesives, porcelain-type products, sealers, paints and rubber products, which are generally

known as pigments and fillers.

While its chemical composition has not been changed, its form certainly has been reduced to its ultimate molecular structure as minute crystals. Thus, under the commissioner's definition of manufacturing, the reduction of marble stone or rock to its ultimate chemical structure of calcium carbonate by the application of grinding and heat *is manufacturing by the applications of machine and labor to raw material.* A similar example would be the making of cloth from cotton fiber, without dye or other chemical additives; or the final manufacture of sugar crystals from cane juice. The composition may be the same but the final form is different.

We repeat that no Georgia cases have been cited; and we are not helped by the cases from foreign jurisdictions cited by one counsel because of conflicting foreign decisions cited by opposing counsel. Therefore, we simply cite the commissioner's rule and apply the facts as submitted which are not contradicted. The lower court did not err in granting the motion for summary judgment in favor of the taxpayer.

*Judgment affirmed. Deen, P. J., and Stolz, J., concur.*

ARGUED MAY 21, 1975 — DECIDED
JUNE 18, 1975.

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, Richard L. Chambers, H. Perry Michael, Gary B. Andrews, Franklin N. Biggins, Assistant Attorneys General,* for appellant.

*Gambrell, Russell, Killorin & Forbes, Theodore M. Forbes, Jr.,* for appellee.