S00G0405, S00G0406. GWINNETT COUNTY BOARD OF TAX ASSESSORS v. GENERAL ELECTRIC CAPITAL COMPUTER SERVICES (two cases).
(538 SE2d 746)

HINES, Justice.

We granted certiorari to the Court of Appeals in *Gen. Elec. Capital Computer Svcs. v. Gwinnett County Bd. of Tax Assessors,* 240 Ga. App. 629 (523 SE2d 651) (1999), cases involving the freeport exemption in OCGA § 48-5-48.2 (b),[1] to address whether the doctrine of col-

---

[1] OCGA § 48-5-48.2 (b) provides:

The governing authority of any county or municipality may, subject to the approval of the electors of such political subdivision, exempt from ad valorem taxation, including all such taxes levied for educational purposes and for state purposes, all or any combination of the following types of tangible personal property:

(1) Inventory of goods in the process of manufacture or production which shall include all partly finished goods and raw materials held for direct use or consumption in the ordinary course of the taxpayer's manufacturing or production business in this state. The exemption provided for in this paragraph shall apply only to tangible personal property which is substantially modified, altered, or changed in the ordinary course of the taxpayer's manufacturing, processing, or production operations in this state. For purposes of this paragraph, the cleaning, drying, pest control treatment, or segregation by grade of grain, peanuts or other oil seeds, or cotton shall constitute substantial modification in the course of processing or production operations. For purposes of this paragraph, remanufacture of aircraft engines or aircraft engine parts or components shall constitute manufacturing operations in this state. Remanufacture of aircraft engines or aircraft engine parts or components means the substantial overhauling or rebuilding of aircraft engines or aircraft engine parts or components;

(2) Inventory of finished goods manufactured or produced within this state in the ordinary course of the taxpayer's manufacturing or production business when held by the original manufacturer or producer of such finished goods. The exemption provided for in this paragraph shall be for a period not exceeding 12 months from the date such property is produced or manufactured; or

(3) Inventory of finished goods which, on January 1, are stored in a warehouse, dock, or wharf, whether public or private, and which are destined for shipment to a final destination outside this state and inventory of finished goods which are shipped into this state from outside this state and stored for transshipment to a final destination outside this state. The exemption provided for in this paragraph

lateral estoppel bars the litigation of a tax issue litigated in a prior year where there has been no significant factual change, but where there has been a change or development in the law. We conclude that collateral estoppel may not pose a bar under such circumstance; but, we affirm the decision of the Court of Appeals in these cases because there has not been such an intervening change or development in the law.

The history of this litigation is chronicled in the opinion of the Court of Appeals. In the early 1990's, General Electric Capital Computer Services (GECC) wished to establish a Georgia warehouse facility to store testing and measuring equipment which it held for sale, lease, and rental to customers in and out of Georgia. GECC was assured its inventory would be exempt from ad valorem taxes under OCGA § 48-5-48.2, and GECC located its warehouse facility in Gwinnett County and was granted the promised freeport exemption for tax year 1992. However, in tax year 1993, the Gwinnett County Board of Tax Assessors denied GECC's application for the freeport exemption. GECC appealed to the superior court, which, by a final order and judgment entered in June 1994, reversed the Board's decision.[2] In 1995, the Court of Appeals affirmed without opinion the superior court's 1994 decision.[3]

A year later, the parties entered into a consent order to resolve disputes which arose after entry of the 1994 order. The Board of Tax Assessors agreed to refund to GECC ad valorem taxes paid in 1993 to the extent these were determined to be subject to the freeport exemption, and granted GECC's 1994 and 1995 applications for the exemption. GECC agreed to waive its right to seek additional sums and all counterclaims were dismissed without prejudice.

The present actions arise from the Board's denial of GECC's applications for the freeport exemption in tax years 1996 and 1997 upon the finding that GECC's Gwinnett County warehouse inventory

---

shall be for a period not exceeding 12 months from the date such property is stored in this state. Such period shall be determined based on application of a first-in, first-out method of accounting for the inventory. The official books and records of the warehouse, dock, or wharf where such property is being stored shall contain a full, true, and accurate inventory of all such property, including the date of the receipt of the property, the date of the withdrawal of the property, the point of origin of the property, and the point of final destination of the same, if known. The official books and records of any such warehouse, dock, or wharf, whether public or private, pertaining to any such property for which a freeport exemption has been claimed shall be at all times open to the inspection of all taxing authorities of this state and of any political subdivision of this state.

[2] The court determined that only the portion of GECC's inventory which was in its possession and held for sale or lease on the assessment date qualified for the freeport exemption.

[3] *Gwinnett County Bd. of Tax Assessors v. G. E. Capital Computer Svcs.*, 216 Ga. App. XXVIII (1995).

did not qualify for the exemption because of a failure to meet the requirements of OCGA § 48-5-48.2. Before the superior court, GECC argued that the Board was precluded as a matter of law from pursuing payment of ad valorem taxes on GECC's inventory because of the 1994 ruling. The superior court found that GECC's inventory in question was the same type that was at issue in the court's 1994 ruling and that none of the material facts or circumstances concerning GECC's business had changed since the earlier decision; however, citing *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, 230 Ga. App. 790 (498 SE2d 297) (1998), the superior court concluded that the inventory was not eligible for the freeport exemption.[4]

GECC challenged the superior court's denial of its motions for summary judgment and its grant of the Board's cross-motions for summary judgment regarding its applications for the freeport exemption in tax years 1996 and 1997. GECC argued to the Court of Appeals that the doctrine of collateral estoppel precluded the relitigation of the question of the eligibility of its warehouse inventory for the freeport exemption. The Court of Appeals agreed; it concluded that the superior court's grant of summary judgment to the Board based upon *Apollo* constituted an impermissible relitigation of GECC's eligibility for the freeport exemption, the issue the Board was estopped to deny by the 1994 order. The Court of Appeals explained that while it had denied the taxpayer the freeport exemption in *Apollo,* finding its inventory ineligible for exemption as "stock in trade" under OCGA § 48-5-48.2 (a) (4),[5] the 1994 order in this instance ruled to the contrary as to at least a portion of GECC's inventory, and that the evidence was that thereafter no change occurred in the relevant inventory. Accordingly, the Court of Appeals concluded that the superior court erred as a matter of law in granting summary judgment to the Board and denying summary judgment to GECC.[6]

---

[4] The Board acknowledges that before the superior court it took the position that the *Apollo* case and GECC's situations were different.

[5] OCGA § 48-5-48.2 (a) (4) provides:
"Stock in trade of a retailer" means finished goods held by one in the business of making sales of such goods at retail in this state, within the meaning of Chapter 8 of this title, when such goods are held or stored at a business location from which such retail sales are regularly made. Goods stored in a warehouse, dock, or wharf, including a warehouse or distribution center which is part of or adjoins a place of business from which retail sales are regularly made, shall not be considered stock in trade of a retailer to the extent that the taxpayer can establish, through a historical sales or shipment analysis, either of which utilizes information from the preceding calendar year, or other reasonable, documented method, the portion or percentage of such goods which is reasonably anticipated to be shipped outside this state for resale purposes.

[6] Because the 1994 order found only a portion of GECC's inventory eligible, the Court of Appeals reversed and remanded the cases for consideration of the sufficiency of GECC's

1. The doctrine of collateral estoppel

precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim – so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim.

*Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866 (2) (463 SE2d 5) (1995). See also *Jebco Ventures v. City of Smyrna*, 259 Ga. 599, 601 (1) (385 SE2d 397) (1989).

It is plain that collateral estoppel applies to successive years in regard to the freeport exemption for such years based upon substantially the same facts. *Fulton County Tax Commr. v. Gen. Motors Corp.*, 234 Ga. App. 459, 465 (1) (507 SE2d 772) (1998). Compare *Hawes v. Superior Pine Products Co.*, 225 Ga. 392 (169 SE2d 126) (1969), which involved an amendment to the contract at issue as well as amendment to the revenue laws. And the Court of Appeals has, in the context of a dispute about the distribution of sales and use tax revenues, cursorily noted that collateral estoppel would not be a bar when there has been an intervening and significant change in the law. *Jackson v. City of College Park*, 230 Ga. App. 487, 490 (1) (496 SE2d 777) (1998).

The Supreme Court of the United States has addressed the role of collateral estoppel in a tax dispute. In *Commissioner of Internal Revenue v. Sunnen*, 333 U. S. 591 (68 SC 715, 92 LE 898) (1948), a case involving the question of federal income tax consequences of intra-family assignments of income, the Court observed that collateral estoppel operates to relieve both the government and the taxpayer of redundant litigation of the same question of a statute's application to the taxpayer's status. Id. at 599. However, the Court stated that the salutary purpose of the doctrine ceased in situations of "a subsequent modification of the significant facts or a change or development in the controlling legal principles" which would render the past determination "obsolete or erroneous, at least for future purposes." Id. The Court contemplated a situation that is "vitally altered" between the times of the first and second judgment. Id. at 600.

In the subsequent case of *Montana v. United States*, 440 U. S.

---

showings in support of its applications for exemption.

147 (99 SC 970, 59 LE2d 210) (1979), involving the constitutionality of the imposition of a gross receipts tax, the Supreme Court emphasized that application of collateral estoppel along with the doctrine of res judicata was "central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." Id., 99 SC at 973 (II). Thus, the *Montana* Court concluded that the Government's reliance on *Sunnen* to void preclusion was misplaced absent "major changes" in the applicable law. Id. at 977 (III) (B). It elaborated that, "[u]nderlying the *Sunnen* decision was a concern that modifications in 'controlling legal principles,' . . . could render a previous determination inconsistent with prevailing doctrine. . . ."

Such considerations are not present in this case.

2. Both the Court of Appeals and the trial court found that there was no factual change in GECC's inventory. And there is no dispute that there has been no change in the relevant provisions of OCGA § 48-5-48.2. Thus, the question of preclusion focuses on *Apollo*. Pretermitting any question of similarity of GECC's inventory to that in *Apollo*, the analysis in *Apollo* does not reveal a change in the law regarding the freeport exemption, much less a major change or a modification of such significance so as to render prior determinations under the exemption erroneous or obsolete. The *Apollo* court framed the central issue in the appeal as "whether the computers that Apollo claims should be exempted from taxation, constituted inventory of finished goods within the meaning of the freeport exemption." *Apollo* at 792 (4). The analysis then merely quoted the extent of the exemption as stated in OCGA § 48-5-48.2 (b) (3), and the definitions of "finished goods" and "stock in trade of a retailer" in subsections (a) (2)[7] and (4) of the statute. The Court of Appeals concluded that the computers in question did not meet the definition of "inventory of finished goods" as contemplated by OCGA § 48-5-48.2 because they were not goods being held for shipment to final destinations outside Georgia for resale; instead, the computers were in the nature of Apollo's stock-in-trade which Apollo was holding for shipment to its retail customers. *Apollo* at 793 (4). Thus, the Court of Appeals was merely applying the express terms of OCGA § 48-5-48.2 to the circumstances at hand and ruling on the facts of Apollo's inventory. That *Apollo* signaled no change in the law regarding the freeport exemption is further borne out by the fact that in finding Apollo not

---

[7] OCGA § 48-5-48.2 (a) (2) states:

"Finished goods" shall mean goods, wares, and merchandise of every character and kind but shall not include unrecovered, unextracted, or unsevered natural resources or raw materials or goods in the process of manufacture or production or the stock in trade of a retailer.

entitled to the freeport exemption, the Court stated that it was "reading the statute according to the natural and most obvious import of its terms." *Apollo* at 793 (4). See also *Delta Air Lines v. Clayton County Bd. of Tax Assessors,* 246 Ga. App. 225 (539 SE2d 905) (2000).[8]

Accordingly, the Court of Appeals did not err in applying the doctrine of collateral estoppel to find that the Gwinnett County Board of Tax Assessors was precluded from relitigating taxpayer GECC's eligibility for the freeport exemption.[9]

*Judgments affirmed. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Carley, J., who dissent.*

CARLEY, Justice, dissenting.

In these cases, we granted certiorari to determine whether the doctrine of collateral estoppel bars the relitigation of a tax issue where there has been no significant factual change, but where there has been a change or development in the law. In Division 1, the majority opinion correctly holds that collateral estoppel does not apply under those circumstances. In Division 2, however, the majority affirms the Court of Appeals, concluding that there was no such intervening change in the law regarding the eligibility of the inventory of General Electric Capital Computer Services (GECC) for the freeport exemption. Because I believe that there clearly was a significant legal development mandating the denial of the tax exemption, I dissent to the affirmance of the judgment of the Court of Appeals.

"[T]he taxes for each year constitute a separate cause of action." *Georgia R. and Banking Co. v. Wright,* 124 Ga. 596, 597 (2) (53 SE 251) (1906), reversed on other grounds, 207 U. S. 127 (28 SC 47, 52 LE 134) (1907). GECC first raised the issue when it filed suit seeking the freeport exemption for the 1993 tax year. In connection with that litigation, the trial court entered an order holding that the inventory was eligible for the exemption. This order was affirmed without opinion by the Court of Appeals. *Gwinnett County Bd. of Tax Assessors v. G. E. Capital Computer Services,* 216 Ga. App. XXVIII (1995). That decision has no precedential value for cases involving other parties. Court of Appeals Rule 36. However, "so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim." *Wal-*

---

[8] This most recent case from the Court of Appeals cites *Apollo* for the following propositions: "In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impractical consequences, the court simply construes it according to its terms and conducts no further inquiry. . . ." *Delta Air Lines v. Clayton County Bd. of Tax Assessors,* supra at 229.

[9] Of course, such determination is limited to the portion of GECC's inventory found exempt under the 1994 order.

*droup v. Greene County Hosp. Auth.*, 265 Ga. 864, 867 (2) (463 SE2d 5) (1995). Thus, as between GECC and Gwinnett County, the trial court's 1994 order, as affirmed by the Court of Appeals, would constitute collateral estoppel in subsequent tax years *unless* there was an intervening change in the law. *Jackson v. City of College Park*, 230 Ga. App. 487, 490 (1) (496 SE2d 777) (1998).

In the context of another taxpayer's suit, the Court of Appeals subsequently issued an opinion holding that an inventory such as that held by GECC would not qualify for the freeport exemption.

> [W]e find that under our law these computers are in the nature of . . . stock-in-trade which [the taxpayer] is holding merely for shipment to its retail customers who use the Galileo computer system, and not for shipment for "resale purposes." OCGA § 48-5-48.2 (a) (4).

*Apollo Travel Services v. Gwinnett County Bd. of Tax Assessors*, 230 Ga. App. 790, 793 (4) (498 SE2d 297) (1998). Under *Apollo Travel*, GECC is not entitled to receive a freeport exemption on its inventory. Even though the holding in *Apollo Travel* as to the taxability of inventory of the type held by GECC was diametrically opposed to the 1994 order, the majority inexplicably concludes that *Apollo Travel* was not "a major change or a modification of such significance so as to render prior determinations under the exemption erroneous or obsolete." However, a judicial decision holding that what had been permitted was no longer authorized has always been considered a significant legal change or development. See *Etkind v. Suarez*, 271 Ga. 352, 356 (5) (519 SE2d 210) (1999) (discussing the importance of stare decisis). *Apollo Travel* did not expressly overrule *G. E. Capital Computer Services*, supra. However, "a decision may be overruled directly or impliedly, as by a refusal to apply it in subsequent cases . . . ." *State Farm Mut. Auto. Ins. Co. v. Astro Leasing*, 194 Ga. App. 515, 517 (390 SE2d 885) (1990). Thus, the inconsistency between *Apollo Travel* and that previous opinion is the controlling factor.

The determinative question is simply whether, after the decision in *Apollo Travel*, the 1994 order can continue to collaterally estop Gwinnett County from recovering a tax on GECC's non-exempt inventory for subsequent tax years.

> In cases involving taxes in different taxable years, the principle of collateral estoppel must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. . . . Collateral estoppel will not bar the litiga-

tion of a tax issue litigated in a prior year where there has been a change or development in the controlling legal principles. The principle of collateral estoppel as applied to tax cases may not be used to vest a right in a rule of law that has become obsolete.

50 CJS, Judgment, § 913 (b), p. 501. Obviously, the reported opinion in *Apollo Travel* controls over the Rule 36 affirmance of the 1994 order holding that GECC was entitled to that exemption.

Thus, the decision of the Court of Appeals in these cases is erroneous, as it misconstrues and misapplies the principle of collateral estoppel. Under that holding, collateral estoppel, as recognized in Georgia, means that a prior decision issued in a case between two parties will control in a later action between them on a similar, but entirely different claim, notwithstanding any changes in the law as a result of a judicial decision rendered subsequently. It is true that a previous decision, although erroneous, controls over a subsequent one in the context of the "law of the case" rule. See *Redmond v. Blau*, 153 Ga. App. 395 (265 SE2d 329) (1980). However, the law of the case principle does not apply here, because the litigation involving the 1993 tax year is an entirely distinct case from this proceeding involving GECC's tax liability for subsequent tax years. By erroneously equating collateral estoppel with the law of the case, the opinion of the Court of Appeals has great potential for causing confusion in the application of these two completely different legal concepts. I believe that it is extremely important that we maintain the clear distinction which has always existed between collateral estoppel and the law of the case. Unfortunately, this Court now compounds the error committed by the Court of Appeals' reversal of the trial court's correct rulings in this case.

I am authorized to state that Chief Justice Benham and Presiding Justice Fletcher join in this dissent.

DECIDED NOVEMBER 13, 2000 —<br>RECONSIDERATION DENIED NOVEMBER 30, 2000.

*Carothers & Mitchell, Richard A. Carothers, Thomas M. Mitchell*, for appellant.

*Ragsdale, Beals, Hooper & Seigler, David K. Beals, Lisa F. Stuckey, Karen G. Thomas*, for appellee.